UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MICHAEL RAY FRANCE,<br><br>Plaintiff,<br><br>v.<br><br>MENDOCINO COUNTY SHERIFF'S OFFICE, et al.,<br><br>Defendants. | Case No. 16-cv-01058-JSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT; DIRECTING DEFENDANTS TO PROVIDE NOTICE RE MEDIATION**<br><br>Re: Dkt. No. 14 |

## INTRODUCTION

Plaintiff, currently a California prisoner, filed this pro se civil rights complaint under 42 U.S.C. § 1983 against the Mendocino County Sheriff's Office ("MCSO") and four MCSO officials for using excessive force against him and denying him adequate medical treatment while he was at the Mendocino County Jail.[1] Defendants filed a motion for summary judgment. Plaintiff filed an opposition, and Defendants filed a reply brief. For the reasons discussed below, the motion for summary judgment is GRANTED IN PART AND DENIED IN PART and Defendants are directed to notify the Court whether they wish to participate in mediation proceedings.

## BACKGROUND

A.    Undisputed Facts

The parties do not dispute the following facts.

An altercation took place between Plaintiff and Defendants Deputy S. Siderakis and Deputy J. Woida in Plaintiff's isolation cell on January 1, 2016. At approximately 7:30 p.m.,

---

[1] All parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 3, 22.)

Woida and Siderakis came into his cell for an inspection.  (Pl. Opp. [2] (ECF No. 31) at 2; Decl. Woida ¶ 2.)  Plaintiff was sleeping, and one of the deputies[3] handed Plaintiff some papers from the window sill where they were not permitted.  (Opp. at 2; Decl. Woida ¶ 4; Siderakis Decl. ¶ 3.)  Plaintiff exchanged hostile words with the deputies, who then left the cell and closed the door behind them.  (Opp. at 2; Siderakis Decl. ¶ 4.)  Plaintiff stood up out of his bed, looked at them through a window out into the hallway, and asked them what the problem was.  (Opp. at 2; Siderakis Decl. ¶ 6; Woida Decl. ¶ 5.)  Woida reopened the door and stood in the doorway with Siderakis next to him, and Plaintiff told them to stay out of his cell.  (Opp. at 2-3; Woida Decl. ¶¶ 5-6; Siderakis ¶¶ 6-7.)  When Woida came in the cell, Plaintiff punched him in the face once, and then Siderakis and Woida each punched Plaintiff in the face.  (Opp. at 3; Woida Decl. ¶ 9; Siderakis Decl. ¶¶ 9-10.)  Plaintiff continued to throw punches as Woida and Siderakis pushed him against the rear wall of his cell and each punched Plaintiff in the face again.  (Opp. at 3; Woida Decl. ¶ 9; Siderakis Decl. ¶ 10.)  Woida grabbed Plaintiff around the legs.  (Opp. at 3-4; Siderakis Decl. ¶ 10.)  Backup officers were summoned and arrived at the cell.  (Woida Decl. ¶ 10.)  Siderakis then wrapped Plaintiff around the head with his arm and took him to the ground away from the wall.  (Opp. at 4; Siderakis Decl. ¶ 10.)  Once Plaintiff was on the ground, Siderakis controlled Plaintiff's upper body, Woida controlled Plaintiff's legs, and an unnamed deputy handcuffed Plaintiff's wrists.  (Opp. at 4; Woida Decl. ¶ 11.)  Woida put Plaintiff in a "figure four leg lock" and shackled his ankles.  (Woida Decl. ¶ 11.)

Plaintiff was escorted to a "safety cell" where he was examined by a nurse.  (Opp. at 5; Woida Decl. ¶ 13; Siderakis Decl. ¶ 14.)  His face was swollen and bruised, his nose was bleeding, and his ankle was swollen and caused him to limp for several days.  (Opp. at 5, Exh. G;

---

[2] Plaintiff's opposition, like his complaint, are sworn under penalty of perjury and are considered opposing affidavits to the extent they set forth facts within Plaintiff's personal knowledge.  (ECF No. 31 at 2.)  *Cf. Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating verified complaint as opposing affidavit to extent allegations were based on personal knowledge); *Johnson v. Meltzer*, 134 F.3d 1393, 1400 (9th Cir. 1998) (like verified complaint, verified motion functions as affidavit).
[3] Plaintiff states that it was Woida who took down the papers, but the incident reports and Defendants' declarations indicate it was Siderakis.  (Opp. at 2; Pearce Decl. Exhs. B, C; Woida Decl. ¶ 4; Siderakis Decl. ¶ 3.)  This dispute is not material to Plaintiff's claims.

Teske Decl. Exhs. A, B; Woida Decl. ¶ 14; Siderakis Decl. ¶ 14.) The nurse did not provide him with any medical treatment. (Opp. at 5; Teske Decl. Exh. A.) That night he could not sleep because of the pain. (Opp. at 5.) Three days later he was examined again, and he was prescribed ibuprofen for his swollen and painful ankle. (Teske Decl. Exh. B.)

At subsequent disciplinary proceedings, jail officials found assault charges against Plaintiff "unfounded." (Opp. Exh. A.)[4]

B.    Disputed Facts

The evidence presented by the parties differs in the following respects.

According to Plaintiff, over the course of several months prior to the altercation, Siderakis would stand outside Plaintiff's cell door and insult and threaten to hurt him. (Opp. at 2.) During this time period, Plaintiff had also seen Deputy Woida attack other inmates and Woida had challenged Plaintiff to a fight. (*Id.*) Plaintiff states that when Woida and Siderakis came into his cell on January 1, 2016, Woida said, "I'm in your cell, what are you gonna do now?" and "We give the orders this is our house, bitch." (*Id.*) According to Plaintiff, when the deputies left the cell, they closed the door completely. (*Id.* at 3.) Plaintiff also states that he threw the first punch only after Woida said, "What are you going to do about it?" and "made his move towards me in a spring." (*Id.*) Plaintiff states that as he backed up, he slipped on a small floor towel and "covered up," but Woida and Siderakis "repeatedly kept punching" him. (*Id.* at 3-4.) After Siderakis took Plaintiff to the ground, Siderakis and Woida pinned his hands and feet, allowing Siderakis to punch him in the face, forehead, side of the head, and shoulders over 24 times while Plaintiff tried to move his head and slip his arms out to protect himself. (*Id.* at 4.) Woida twisted one of Plaintiff's ankles until Plaintiff felt his muscles tear, and Plaintiff "jerked back." (*Id.*) After he was handcuffed, he was punched two more times in the face, and Siderakis kneed him in the head ten times. (*Id.*)

---

[4] In addition to his own sworn statement, Plaintiff also submits with his opposition a declaration by Francisco Gonzalez, an inmate housed nearby, describing some of the circumstances surrounding the altercation. (Opp. Exh. E.) Defendants object to "much" of this declaration as hearsay and on the grounds that Gonzalez could not see inside Plaintiff's cell. The Court need not consider Gonzalez's declaration to resolve this motion, however, because it is consistent with Plaintiff's sworn statement, which is sufficient to create triable issues of fact on its own.

Plaintiff states that in addition to his ankle and face injuries, he suffered from concussion symptoms including an inability to focus. (*Id.* at 5.) According to Plaintiff, when he was in the safety cell, the medical staff told him that Sergeant Bohner had told them to refuse to treat him. (*Id.*) Bohner arrived and gave him a paper towel and exchanged Plaintiff's bloody shirt for a clean jumpsuit. (*Id.*) Plaintiff's head started to hurt more, and he could not focus. (*Id.* at 6.) He was returned to his isolation cell, where a nurse told him that his ankle was "bad" but on Bohner's orders he could not provide ice, a wrap, or any medical treatment. (*Id.*)

Defendants' account differs in that they state that the cell door was not all the way closed when they left, and Woida reopened the door because he and Siderakis could not hear what Plaintiff said to them. (Woida Decl. ¶ 5; Siderakis Decl. ¶ 6.) Defendants also state that Plaintiff then took an "aggressive fighting stance towards" them, threatened them, and did not heed their orders to sit back down. (Woida Decl. ¶¶ 6-7; Siderakis Decl. ¶¶ 7-8.) Instead, Plaintiff put up his fists and rocked back and forth, and again refused orders to get down. (Woida Decl. ¶ 8; Siderakis ¶ 9.) Defendants state that they each punched Plaintiff twice in the face while he was standing and before he was restrained, and they do not admit to punching Plaintiff any further, or to kicking him, kneeing him or twisting his ankle. (Woida Decl. ¶¶ 9-12; Siderakis Decl. ¶¶ 9-11.) After Plaintiff was under control, he told the deputies that he knew where they lived and would kill their families. (Woida Decl. ¶ 12; Siderakis Decl. ¶ 11.) Defendants also state that Plaintiff told them he was a "made man" and could hurt them while they were walking to the safety cell. (Woida Decl. ¶ 15; Siderakis Decl. ¶ 15.) Woida also sustained minor cuts and had some swelling in his face. (Woida Decl. ¶¶ 16-17.)

## DISCUSSION

A.  <u>Standard of Review</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Id.*

At summary judgment, the judge must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). If more than one reasonable inference can be drawn from undisputed facts, the trial court must credit the inference in favor of the nonmoving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

B.    <u>Analysis</u>

1.    <u>Excessive Force</u>

Plaintiff complains that Defendants Woida and Siderakis used excessive force against him. The treatment a convicted prisoner[5] receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 7.

Under Plaintiff's version of the events, which the Court must accept as true at this stage of the litigation, there was no need to use force before the altercation began because neither Defendants nor others were at risk of being harmed by Plaintiff. At that point, Siderakis and Woida were outside of the cell, Plaintiff was inside the cell by himself, and the door was closed. Even if --- as Defendants assert --- the door was not fully closed and Plaintiff was shouting threats or obscenities and in a fighting stance, there is no evidence that Plaintiff advanced towards the door or was trying to get to Siderakis and Woida. Instead of re-opening the door, continuing to

---

[5] Plaintiff had already been convicted when the altercation occurred.

exchange hostile words, and advancing towards Plaintiff, Defendants could have simply made sure the door was closed (and finished closing it if it was not) and left. This would have ended the encounter without a fight and prevented anyone from getting injured. There is no evidence showing why shutting the door and walking away from a hostile inmate in a single cell would have been unsafe or otherwise not have helped maintain order.

Defendants argue that the use of force was justified because Plaintiff punched Woida. The evidence viewed in a light most favorable to Plaintiff shows that Woida sprang towards him without warning him to get down, he could not flee because he was in a small cell with no other way out, and Woida and Siderakis had a history of beating inmates and threatening Plaintiff. These circumstances may justify Plaintiff punching Woida in self-defense, but once Plaintiff punched him, then the deputies could reasonably perceive that Plaintiff posed a threat and use force to restrain him and restore order. However, the amount of force Siderakis and Woida applied was extreme, at least under Plaintiff's account. With Plaintiff on the ground, they punched him 24 times in the face, forehead, side of the head, and shoulders while his arms were pinned, twisted his ankle until his muscles tore, and then punched him in the face twice and kneed him in the head ten times after he was handcuffed and in leg restraints. At that time, a number of backup guards had arrived and no other inmates or threats to the deputies' safety were present. Although Plaintiff had punched Woida once and was moving around to avoid the punches to his face when he was first taken to the ground, the deputies continued to apply a substantial amount of force after Plaintiff was restrained and had stopped resisting. Under these circumstances, a fact-finder could reasonably find that Siderakis and Woida used force more than merely to ensure safety and maintain order, but rather to sadistically and maliciously inflict harm on him.

Moreover, the evidence of Plaintiff's injuries, when viewed in a light favorable to Plaintiff, does not undermine this conclusion. A significant injury is not a threshold requirement for stating an excessive force claim. *Hudson*, 503 U.S. at 7. Rather, the extent of injury is one factor that may suggest whether the use of force could possibly have been thought necessary in a particular situation and may also provide some indication of the amount of force applied. *Id.*; *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Plaintiff describes concussion-like symptoms in his head,

bleeding and swelling in his face, severe swelling in his ankle that made him limp for several days.

Plaintiff has submitted photos showing a swollen ankle and swelling and bruises on his face, and

his medical records indicate that his ankle was swollen three days later after the fight. (Opp. Exh.

G.) Such injuries are consistent with the amount of force described by Plaintiff and support the

finding of triable issues of fact as to whether Siderakis and Woida violated Plaintiff's Eighth

Amendment rights.

In addition to Siderakis and Woida, Plaintiff names two supervisory Defendants, Captain

T. Pearce and Lieutenant J. Bednar, and a municipal Defendant, the MCSO. The motion for

summary judgment contains no separate argument as to why summary judgment should be granted

in favor of these Defendants. The only argument advanced is that the force used was for the

purpose of maintaining safety and order. As there are triable issues of fact regarding that

argument, the motion for summary judgment must be denied for all Defendants on Plaintiff's

claim of excessive force under the Eighth Amendment.

### 2. Medical Care

Plaintiff also claims that he received insufficient medical care for his injuries following the
altercation. Deliberate indifference to serious medical needs violates the Eighth Amendment's
proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).
However, liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the
plaintiff can show that the defendant's actions both actually and proximately caused the
deprivation of a federally protected right. *Lemire v. Cal. Dept. of Corrections & Rehabilitation*,
726 F.3d 1062, 1085 (9th Cir. 2013). A person deprives another of a constitutional right within
the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act
or omits to perform an act which he is legally required to do, that causes the deprivation of which
the plaintiff complains. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). To defeat summary
judgment, the plaintiff must instead "set forth specific facts as to each individual defendant's"
actions which violated his or her rights. *Id.* at 634. It is further noted that supervisors and
employers are not vicariously liable for the actions of their subordinates under a theory of
respondeat superior. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff has presented
no evidence that Siderakis, Woida, or the supervisory officials Pearce and Bednar were involved
with his medical care or otherwise caused the medical care he received to be deficient. Indeed, the
papers show that it was other MCSO employees who were involved in his care and the decisions
regarding his care. (*See* Opp. at 5-6; Teske Decl. Exhs. A, B.) Absent any evidence that the
individual Defendants made any medical determinations or took any actions that proximately
caused Plaintiff not to receive treatment that he required, the individual Defendants are not liable
under Section 1983 for the violation of his Eighth Amendment right to adequate medical care.

Plaintiff has also named the MCSO, a municipal government entity, as a Defendant. To
impose municipal liability under Section 1983 for a violation of constitutional rights resulting
from governmental inaction or omission, a plaintiff must show: (1) that the plaintiff possessed a
constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that
this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the
policy is the moving force behind the constitutional violation. *Plumeau v. School Dist. #40
County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997). There is no evidence or even allegation of a

municipal policy that led to the asserted inadequacies in Plaintiff's medical care. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiff does not argue and there is certainly no evidence that his medical care decisions were made by a lawmaker or policymaking official, or part of a common pattern or practice at the jail. Accordingly, like the individual Defendants, the MCSO is entitled to summary judgment on Plaintiff's medical care claim.

C. <u>Video Recordings</u>

With their reply brief, Defendants submitted video recordings of the incident, as well as of escorting Plaintiff to a safety cell and of Plaintiff's first few minutes in the safety cell. It is improper for the moving party to introduce new facts in the reply brief that were not presented in the moving papers. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 894-95 (1990). Moreover, the videos were not given to Plaintiff when he requested them in discovery. (ECF Nos. 24, 27.) Defendants stated that they were "not opposed" to him viewing them but did not provide them to him. (ECF No. 27.) As Plaintiff was in prison, he had no ability to travel to the Mendocino County Jail to view them.[6] For these reasons, the Court has not considered the video recording evidence in analyzing the summary judgment motion.

It is noted that the video recordings do not in any event help Defendants' argument so it does not make sense to postpone the resolution of the summary judgment motion to allow Plaintiff to file a further brief regarding them. *See Beaird v. Seagate Technology*, 145 F.3d 1159, 1164-65 (10th Cir. 1998). To begin with there is no sound, so they do not clarify the differing accounts of the verbal provocations, threats, and warnings. Second, when Plaintiff is brought to the ground, his head, face, and portions of his torso and legs are not visible because they are either off the frame or blocked from the camera by Siderakis's body. As a result, the video does not clear up the disputes over whether Siderakis hit or kneed Plaintiff in the head when Plaintiff was on the ground, whether and when his arms were pinned at his side, and whether the deputies continued to apply force after Plaintiff had stopped resisting and was in handcuffs. In addition, as the video only records the altercation and its immediate aftermath, it does not depict Plaintiff's account of the threats and beatings he witnessed by Woida and Siderakis before the day of the altercation, nor does it depict Plaintiff's medical care afterwards. The video does show that when Plaintiff is on

---

[6] The recordings were later served on Plaintiff with the reply brief. (ECF No. 34.)

the ground he continues to struggle, Siderakis controls his torso, Woida twists Plaintiff's ankle, and Plaintiff is limping when he is escorted to the safety cell. This is consistent with Plaintiff's account and does not alter the Court's conclusion. Accordingly, no further briefing is in order.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Summary judgment is granted on Plaintiff's medical care claim and is denied as to his claim of excessive force.

Discovery --- which was opened in the Order of Service --- will close 60 days from the date this order is filed.

**Within 14 days of the date this order is filed, Defendants shall advise the Court in writing whether they wish to participate in the Pro Se Prisoner Mediation Program.**

This Order disposes of Docket No. 14.

**IT IS SO ORDERED.**

Dated: June 30, 2017

_Jacqueline Scott Corley_
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL RAY FRANCE,

         Plaintiff,

    v.

MENDOCINO COUNTY SHERIFF'S OFFICE, et al.,

        Defendants.

Case No. 16-cv-01058-JSC

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on June 30, 2017, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Michael Ray France ID: AZ6601
Ironwood State Prison
P.O. Box 2199
(C-1-230)
Blythe, CA 92226

Dated: June 30, 2017

Susan Y. Soong
Clerk, United States District Court

By: _____
Ada Means, Deputy Clerk to the
Honorable JACQUELINE SCOTT CORLEY